**FISHER–PRICE, INC., Plaintiff,**

v.

**SAFETY 1ST, INC., Defendants.**

**No. Civ.A. 01–51.**

United States District Court,
D. Delaware.

Aug. 28, 2003.

Patricia Smink Rogowski, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Plaintiffs/Counter–Defendants.

Allen M. Terrell, Jr., Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, for Defendants/Counter–Claimants.

### *MEMORANDUM AND ORDER*

SLEET, District Judge.

## I.  INTRODUCTION

On January 26, 2001, the plaintiff, Fisher–Price, Inc. ("Fisher–Price"), brought a patent

infringement action against Safety 1st, Inc. ("Safety 1st") alleging infringement of several patents. After a *Markman* hearing on April 4, 2002, the court granted summary judgment in favor of Safety 1st regarding infringement of certain of those patents. The remaining infringement claims were tried to a jury in a trial beginning on July 22, 2002. Following the trial, the jury returned a verdict in favor of Fisher–Price, and awarded it lost profits and infringement damages totaling $1,900,000.

Presently before the court is a post-trial motion by Safety 1st seeking reimbursement pursuant to Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure [1] of $34,626 in fees. Safety 1st's expert witness, Creighton G. Hoffman, charged these fees for time spent attempting to comply with discovery requests by Fisher–Price. For the following reasons, the court will grant this motion in part, and order Fisher–Price to reimburse Safety 1st $13,166 in fees.

## II. STANDARD OF REVIEW

Rule 26(b)(4) governs discovery scope and limits as pertaining to expert witnesses. The relevant subsection, Rule 26(b)(4)(C), states: "Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision...." FED.R.CIV.P. 26(b)(4)(C). Therefore, certain fees related to discovery may normally be paid pursuant to this Rule, so long as the fees are reasonable, and the award would not create manifest injustice. "Manifest injustice" is a "stringent standard." *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir.1995). Reasonableness is evaluated by a seven-factor test focusing on the nature of the tasks performed by the expert claiming the fees and the rate of fees charged by like experts. *Edin v. Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 546 (D.Ariz.1999). These standards will be discussed in more depth, as applied to the present case, below.

## III. BACKGROUND

Safety 1st retained the services of damages expert Creighton G. Hoffman to testify at trial. Pursuant to Rule 26(b)(4)(A), Hoffman was deposed on or about May 7, 2002. Fisher–Price also subpoenaed Hoffman pursuant to Rule 45 on April 29, 2002. The subpoena ordered Hoffman to search through his company's files to locate and produce transcripts of his previous deposition testimony from approximately forty cases over the past four years. The subpoena also required Hoffman to obtain copies of protective orders from those same cases. Fisher–Price indicated that the purpose of the subpoena was to evaluate the consistency of Hoffman's research methodology in prior cases in order to prepare a more thorough cross-examination of Hoffman at trial. At the time it was served, neither Hoffman nor Safety 1st objected to the subpoena.

The following is a brief chronology of Hoffman's efforts to comply with the subpoena. Hoffman failed to produce the requested documents by the May 7, 2002 deposition, which occurred only one week after service of the subpoena. On July 1, 2002, the court ordered Hoffman to produce, within forty-five days, copies of the requested transcripts, or copies of protective orders that precluded him from doing so. Hoffman failed to produce the required documents by the court-ordered deadline. On November 25, 2002, the court ordered Hoffman to produce the documents by November 28, 2002, a deadline that came and went with no results. On January 9, 2003, Hoffman was ordered, for a third time, to comply with the April 29, 2002 subpoena, and he was specifically directed to serve notice to third parties to produce the relevant depositions or protective orders. Subsequently, some third parties produced redacted transcripts of Hoffman's prior testimony. On January 15, 2003, in the midst of trial proceedings, the court ordered Hoffman to be deposed concerning those transcripts he had produced out of the dozens that Fisher–Price had requested.

Although several court-ordered deadlines passed without the required production by Hoffman, it appears that he had attempted to

---

**1.** Hereinafter, any "Rule" cited by the court shall refer to a Federal Rule of Civil Procedure.

comply with the subpoena and court orders by contacting prior clients and attorneys, and culling through his records for the requested documents. Indeed, from April 29, 2002, the date the subpoena was served on him, until February 2, 2003, Hoffman billed a total of fifty hours for time spent attempting to locate the documents and otherwise comply with Fisher–Price's discovery requests. *See* Hoffman Declaration and Attachments. According to Hoffman, the services he rendered during those hours included "contacting clients," "contacting opposing counsel," "review[ing] boxes ... in storage files," and "copying ... files." *Id.* These hours were billed at Hoffman's normal fee of $495 per hour. *Id.* Hoffman's associates and administrative staff spent an additional thirty-three hours assisting him in his efforts to locate and produce the requested material. *Id.* This time was billed at lesser rates in a range of $75 to $250 per hour. *Id.* The services rendered by Hoffman and his associates result in a total fee of $34,626.

## IV.  DISCUSSION

Safety 1st asserts that because there would be no "manifest injustice" in awarding a payment of fees in this case, it necessarily follows that Fisher–Price must reimburse it for Hoffman's fees, as mandated by the language of Rule 26(b)(4)(C). Fisher–Price responds with three contentions. First, it argues that Rule 26(b)(4)(C) does not apply in this case, because the fees incurred were related to the subpoena filed pursuant to Rule 45, and not pursuant to a discovery request under Rule 26. Second, Fisher–Price claims that even if Rule 26 does apply to this case, awarding fees to Safety 1st would create "manifest injustice" because it would be forced to pay for Hoffman's services despite his delays and failure to timely comply with the subpoena. Third, the plaintiff argues that even if Rule 26 applies and the awarding of fees were not manifestly unjust, the amount requested is entirely unreasonable, given the exorbitant hourly rate charged for seemingly administrative tasks. Each of these arguments will be addressed in turn.

## A.  The Relationship Between Rule 26 and Rule 45

■ Rule 26(b)(4)(C) states: "Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in *responding to discovery under this subdivision* ..." FED. R. CIV. P. 26(b)(4)(C) (emphasis added). Fisher–Price argues that Rule 26 is not invoked in this case because Hoffman was responding to discovery under Rule 45, not Rule 26, and that, therefore, this matter does not fall under "this subdivision." The court finds this argument unpersuasive.

Although initiated by a Rule 45 subpoena, the material sought from Hoffman by Fisher–Price clearly falls within the ambit of subdivision 26(b). Rule 26(b) generally pertains to the scope of discovery as it relates to expert witnesses. In this context, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter ... that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any ... documents...." FED. R. CIV. P. 26(b)(1). Transcripts of Hoffman's previous testimony clearly constitute such matter. Furthermore, Rule 26(b)(4)(B) permits parties to "discover facts known or opinions held by an expert." Here, the testimony transcripts requested by Fisher–Price to examine the methodologies used by Hoffman in other cases are, quintessentially, "facts known or opinions held" by Hoffman. Therefore, it is clear that when Hoffman spent time and effort in locating these records, he was undoubtedly "responding to discovery under this subdivision." *Cf. Fleming v. United States,* 205 F.R.D. 188, 190 (W.D.Va.2000) ("[I]t is well established that time spent by an expert preparing for his or her deposition by opposing counsel is part of a reasonable fee under Rule 26(b)(4)(C)."). It is irrelevant that Fisher–Price employed a subpoena pursuant to Rule 45 as a prelude to discovery under Rule 26, as Rule 45 governs merely the procedural aspects of serving subpoenas, including those related to the deposition of a third party expert under Rule 26. Because the plaintiff's requests for Hoffman's past testimony constituted, in essence, a hunt for

discoverable material under Rule 26, Hoffman's efforts to comply with the subpoena and the related court orders clearly fall within the ambit of Rule 26(b)(4)(C) and are eligible for reimbursement by the party seeking the discovery.

## B. Whether an Award of Fees Would Create Manifest Injustice

■ Rule 26(b)(4)(C) mandates that courts "shall require that the party seeking discovery pay the expert a reasonable fee," unless doing so would create manifest injustice. Indeed, absent a finding of manifest injustice, an award of such costs is mandatory. *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 879 (9th Cir.1986). Although there is scant case law interpreting the meaning of "manifest injustice" in the context of Rule 26, courts have drawn upon the analysis of the phrase as it arises in the context of Rule 16(e), which governs amendments to final pretrial orders. *See, e.g., Reed v. Binder*, 165 F.R.D. 424, 427–28 (D.N.J.1996) (determining manifest injustice standard after examination of relevant caselaw, Advisory Committee Notes regarding amendments to Rule 26, and analogous context of Rule 16). In this analogous context, determining whether manifest injustice would occur requires "'weigh[ing] the possible hardships imposed on the respective parties ... [and] balanc[ing] the need for doing justice on the merits between the parties ... against the need for maintaining orderly and efficient procedural arrangements.'" *Id.* (quoting *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir.1995)). In this analysis, the court "must exercise restraint." *Id.* (citing Advisory Committee Note to Rule 16).

Applying the balancing standard to the motion before the court, the court finds that requiring Fisher–Price to pay Hoffman's fees would not result in a manifest injustice. First, there would be no undue hardship to Fisher–Price, a large, financially successful multinational corporation. Second, it is routine, and only fair, that the party requesting certain information should bear the costs associated with producing such information. This comports with the purpose of Rule 26(b)(4)(C) which is "to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *City of Twin Falls*, 806 F.2d at 879 (citing 4 J. MOORE, J. LUCAS, & G. GROTHEER, JR., MOORE'S FEDERAL PRACTICE, para. 26.66[5] (2d ed.1984)). This is particularly true in this case, where Fisher–Price requested voluminous and sensitive material dating back several years. Indeed, it would not be unfair to characterize the plaintiff's requests of Hoffman as extraordinary. *See* Hoffman Declaration at 3 (stating that, of the more than forty cases in which he has served as an expert, "the discovery demands made of [him] in this matter ... far exceeded anything [he had] ever experienced in any of those other cases"); *see also Collins v. Village of Woodridge*, 197 F.R.D. 354, 357–58 (N.D.Ill.1999) (requiring defendants to pay for time reasonably spent by plaintiff's expert in preparing for deposition and noting that such fee-shifting is "particularly" appropriate in a case "in which the expert's reports were quite extensive"). Furthermore, Safety 1st did not request to see any of the transcripts which were sought by Fisher–Price and produced by Hoffman. Thus, to require the defendant to bear the cost of the production of discovery material from which it in no way benefitted would be rather inequitable in this case.

Fisher–Price objects that it is manifestly unjust to require it to foot the bill for Hoffman's allegedly delinquent and half-hearted responses to its discovery requests. Although it is certainly true that Hoffman did not timely comply with the subpoena or the court's orders, it appears from the record that he attempted to do so but that, due to the nature of the request and the fact that much of the material was not under his control, he simply was not able to do so. For example, it appears that many of the transcripts of his previous testimony were subject to protective orders, to which Hoffman did not have ready access. Hoffman quickly produced those transcripts that were in his possession and were not subject to protective orders. Locating the other transcripts entailed correspondence with more than thirty attorneys from previous cases. Furthermore, Hoffman did eventually produce some

of the requested documents, albeit very late in the process.

Obviously, the court does not condone repeated noncompliance with the court's orders. Nonetheless, the court is convinced that the delays on the part of Hoffman and/or counsel for the defendant were not a result of bad faith. The court also acknowledges the rather extraordinary scope of the plaintiff's discovery requests. Thus, although the court recognizes that requiring Fisher–Price to pay Hoffman's fees in light of the repeated delays may seem, to some extent, unfair, the balance of all of the equities in this case convinces the court that any such unfairness does not rise to the level of manifest injustice. Moreover, by following the general and unambiguous rule which requires the party seeking discovery to pay the associated costs, the court's order comports with the goal of "maintaining orderly and efficient procedural arrangements." As such, the court will order Fisher–Price to reimburse Safety 1st for costs associated with its discovery requests.

## C. Reasonableness of the Requested Fees

■ Having determined that payment of Hoffman's fees is appropriate, the court next must consider whether the requested fee is reasonable. In determining whether a fee request pursuant to Rule 26(b)(4)(C) is reasonable, courts consider seven criteria: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters;

and (7) any other factor likely to assist the court in balancing the interest implicated by Rule 26. *Edin v. Paul Revere Life Ins. Co.,* 188 F.R.D. 543, 546 (D.Ariz.1999). "Ultimately," however, "it is in the court's discretion to set an amount that it deems reasonable." *Fleming,* 205 F.R.D. at 190 (citing *Hurst v. United States,* 123 F.R.D. 319, 321 (D.S.D.1988)).

■ Here, there is little doubt that Hoffman's area of expertise—damages calculations in patent infringement actions—is indeed a complex one, and the education and experience necessary to give an informed opinion is surely of a high level. Although neither party discusses in its briefing the nature, quality, and complexity of Hoffman's responses at the January 16, 2003 deposition, or even the amount of time spent there, the court will assume that the expert's responses were adequate and comparable to the work of any other competent expert in the field. Without information from either party as to the amount of time spent at the deposition, the court will assume a deposition of two hours, and two additional hours of preparation by Hoffman.[2]

Hoffman's disputed fees relate to nearly one hundred hours of labor entailed in his appearance at the January 16, 2003 deposition and attempts to gather the information requested by Fisher–Price.[3] Beyond the deposition itself, however, it is difficult to determine the nature, quality, and complexity of the tasks performed by Hoffman and his staff to comply with the plaintiff's discovery request. Most of Hoffman's billing invoices include a bare notation of the hours logged, without an indication of the sorts of tasks performed. The only invoice which details the nature of the work performed by Hoffman and his associates describes these ser-

---

**2.** Because the court wishes to craft an equitable resolution to the present dispute regarding fees, it has attempted to use precise data wherever possible. Lacking such precise information due to the failure of the parties to present it, the court occasionally has been forced to make certain assumptions and educated guesses regarding, for example, the duration of the January 16, 2003 deposition. The court, however, views such details as non-dispositive of the greater questions at issue in the present motion. Therefore, the court will entertain no request for reargument regard-

ing these assumptions, or any other issue discussed in this memorandum.

**3.** The disputed fees relate only to Hoffman's attempts to respond to Fisher–Price's request for the transcripts of Hoffman's previous testimony and his time spent at the January 16, 2003 deposition. Hoffman prepared separate invoices for his time spent preparing for and testifying at trial, and these fees have been paid by Safety 1st.

vices as contacting clients, reviewing boxes in storage files, sending Federal Express requests, and copying protective orders and other relevant documents. *See* Attachments to Hoffman Declaration. These tasks can only be described as administrative and noncomplex in nature. In his Declaration, Hoffman also describes making more than thirty written communications to attorneys in attempts to receive copies of protective orders and/or testimony transcripts. This, too, can be described as an administrative task. As to the other services which Hoffman himself performed, the court can only speculate, as there is no detailed accounting of the nature of this work. Thus, without more, the court cannot condone reimbursement at a rate of $495 for the performance of the enumerated administrative tasks, which could easily have been delegated to assistants billing lesser rates.

Fisher–Price submits that $50 per hour would be a reasonable rate for such administrative tasks; Safety 1st does not offer an alternative suggestion. The rate of $50 per hour more accurately reflects the value of the administrative work performed. Furthermore, the court also has considered the fact that Hoffman ultimately produced only a small percentage of the requested transcripts, as well as the repeated delays and noncompliance with the court's orders on the part of Hoffman and counsel for the defendant. Even in the absence of bad faith, such conduct should not be condoned with an award of unreasonably high fees. Therefore, considering all of the information before it, the court will acquiesce to the plaintiff's request to reduce Hoffman's billable rate to $50 per hour for all of the billed hours except those actually spent at and in preparation of the January 16, 2003 deposition.

Thus, the court will order Fisher–Price to reimburse Safety 1st $13,166 for the time spent by Hoffman and his associates in attempting to comply with the plaintiff's discovery request. This figure reflects the following calculations:

(1) For the period of September 30, 2002 through October 27, 2002, Hoffman billed three hours. Reimbursed at a rate of $50 per hour, the total for this period is $150.

(2) For the period of October 28, 2002 through December 1, 2002, Hoffman billed ten hours. Reimbursed at a rate of $50 per hour, the total for this period is $500.

(3) For the period of December 2, 2002 through February 2, 2003, Hoffman billed thirty-seven hours. It is assumed that four of these hours were spent at and preparing for the January 16, 2003 deposition. Reimbursed at Hoffman's normal expert witness rate of $495 per hour, the reimbursable amount for these four hours is $990. The remaining thirty-three hours will be reimbursed at a rate of $50 per hour, for a total of $1650. The reimbursable amount for this period is ($990 + $1650), or $2640.

(4) Thus, the total amount reimbursed for Hoffman's time shall be ($150 + $500 + $2640), or $3290.

(5) Fisher–Price has not objected to the billing rate of Hoffman's associates. As such, the amount billed by Hoffman's staff, $9876, shall remain undisturbed.

(6) The total amount to be reimbursed to Safety 1st by Fisher–Price shall be ($3290 + $9876), or $13,166.

**D. Fisher–Price's Requests that Safety 1st be held in Contempt and Pay Certain Fees**

Finally, although it has not filed a formal motion, Fisher–Price requests in its briefing that Safety 1st be held in contempt of court and that all of the plaintiff's fees and expenses incurred in responding to the present motion be assessed to Safety 1st. The court declines to grant the plaintiff's request. As stated above, the court does not find that the delays incurred by Hoffman or counsel for the defendant were motivated by bad faith. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (noting court's inherent power to order sanctions in form of attorneys' fees against party conducting litigation in bad

faith). Neither is the present motion unfounded or baseless, or otherwise motivated by bad faith, such that an award of fees and expenses is warranted. Fisher–Price's requests in this vein are denied.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Safety 1st's Motion for Payment of Fees is GRANTED IN PART;

2. Fisher–Price shall reimburse Safety 1st $13,166 for fees charged by Creighton G. Hoffman and his associates.